UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ALTMAN STAGE LIGHTING, INC.,

                            JURY TRIAL DEMANDED

          Plaintiff,

  -against-                            CIVIL ACTION NO: 7:20-cv-20-2575

JULIE SMITH,                              **COMPLAINT**

          Defendant.
-------------------------------------------------------------------x

Plaintiff ALTMAN STAGE LIGHTING, INC., by its attorneys, POLLOCK & MAGUIRE, LLP, for its Complaint against Defendant JULIE SMITH, alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for damages and injunctive relief brought under New York law and Federal law to recover damages incurred and obtain injunctive relief as a result of the violation by Defendant Julie Smith of her duties to her employer, Plaintiff Altman Stage Lighting, Inc. ("Altman Lighting" or the "Company"), arising from her having falsely represented to Altman Lighting that a product that Altman Lighting was developing had not been developed sufficiently to be marketed, while secretly arranging for that product to be delivered to her home with the apparent intent of using it for her own benefit, to the severe detriment of Altman Lighting, and arising from her misappropriation of a trade secret belonging to Altman Lighting.

## JURISDICTION AND VENUE

2. This Court has personal jurisdiction pursuant to Rule 4 of the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules § 302(a).

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C.

1

§1332(a)(1) in that the action involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court also has jurisdiction over this matter pursuant to 18 U.S.C.A. §1836(1) (the "Defend Trade Secrets Act" or "DTSA") in that the trade secret described herein is related to a product or service used in, or intended for use in, interstate or foreign commerce.

5. The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. §1391(b)(1) because Plaintiff Altman Lighting has its principal place of business in Yonkers, New York.

## PARTIES

6. Plaintiff Altman Lighting is a domestic corporation formed under the laws of the State of New York, with its principal place of business at 57 Alexander Street, Yonkers, New York, 10701.

7. Plaintiff Altman Lighting is a manufacturer and vendor of lighting products that has historically specialized in lighting products for theatre and architectural lighting.

8. Defendant Julie Smith is a former employee of Altman Lighting and upon information and belief resides at 6319 Warm Mist Lane, Dallas, Texas, 75248.

9. Defendant Smith purposefully transacted business within the state of New York by accepting employment with Altman Lighting, a New York business, regularly traveling to the State of New York to perform her duties for Altman Lighting, and regularly communicating with and issuing directions to Altman Lighting's employees in the State of New York.

## STATEMENT OF MATERIAL FACTS

10. In April 2016 Altman Lighting hired Defendant Smith to serve as General Manager of the Company.

11. In the course of her employment by Altman Lighting, Defendant Smith continued to reside in Texas, but regularly traveled to New York to perform her duties for Altman Lighting and performed services while physically present both in Texas and in New York.

**Altman's Product and Trade Secret**

12. During her tenure at Altman Lighting, Defendant Smith gained the trust of Chief Executive Officer Robert Altman and other employees, was granted a significant amount of authority, and was considered as a potential candidate to succeed Robert Altman as Chief Executive Officer.

13. In or about late 2015, Altman Lighting assigned to its employee, Jeffrey Maddox, primary responsibility to develop as a new product an LED ("light emitting diode") grow light for cannabis and other agricultural products that utilized technology similar to the LED technology Altman Lighting used for its stage lighting.

14. Information related to this new grow light had independent economic value and was not readily known to or readily ascertained through proper means by persons outside the Company.

15. Altman Lighting held discussions with the Colorado company Medicine Man Technologies ("Medicine Man"), a cannabis consulting company that provides advice, equipment, and materials to entities and individuals interested in growing cannabis, and anticipated that upon development of the grow light it would enter into an exclusive arrangement with Medicine Man to distribute the grow light, as well as marketing the new product to other customers world-wide.

16. In early 2016 Russell Altman, Altman Lighting's Business Development Manager, and Peter Borchetta, Altman Lighting's Head of Engineering, visited Medicine Man to determine its needs for the grow light and develop design specifications, and on February 2,

2016, Altman Lighting received specifications from an outside consultant for a product that would provide optimal lighting for agricultural purposes.

**Ms. Smith's Misrepresentations, and Failures to Disclose Vital Information**

17. As General Manager hired in April 2016, one of the areas of the Company that Defendant Smith was responsible for was the engineering department.

18. Initially Peter Borchetta and Jeffrey Maddox worked together on the grow light and in April 2016, Maddox provided Borchetta with a 3D drawing of the initial concepts of the product based on the specification and project needs.

19. In October 2016, at Defendant Smith's recommendation, Jeffrey Maddox was appointed Altman Lighting's Head of Engineering, and Peter Borchetta was removed as Head of Engineering and appointed Head of Product Innovation.

20. As Head of Product Innovation, Peter Borchetta was responsible for drawing up "roadmaps" and product specifications for products and distributing those roadmaps and product specifications to engineering for development.

21. Business Development Manager Russell Altman was the primary Altman Lighting employee responsible for marketing the grow light that was being developed, and beginning in early 2017 he inquired on numerous occasions of Defendant Smith concerning progress being made in developing that product.

22. In response to such inquiries, Defendant Smith initially responded by saying that she and Mr. Maddox were working on it but the grow light was behind schedule, attributing the delay to various reasons, such as a lack of funding or inadequate resources.

23. Despite being told by Defendant Smith initially that there had been delays in developing the grow light, Russell Altman continued to market the grow light to potential

purchasers based on the information provided by Defendant Smith that she and Mr. Maddox were working on it.

24. Beginning in or about March 2017, both CEO Robert Altman and Business Development Manager Russell Altman began to confront Defendant Smith concerning the apparent lack of progress in developing the grow light.

25. In or about August 2017, Russell Altman asked Defendant Smith what the issues were with the development of the grow light, to which Defendant Smith responded by saying that she had learned Mr. Maddox had not been working on the grow light and had been lying to her about his progress with the product.

26. On August 25, 2017, Mr. Maddox was written up for failing to follow through on development of the grow light and other alleged failings.

27. In October 2017, Defendant Smith stated in an email that Altman Lighting does not have the funds to develop the grow light.

28. Mr. Maddox left Altman Lighting with his final day on November 17, 2017 due to the threat of being fired stemming from the August 25 write-up.

29. Mr. Maddox's exit interview was conducted by Defendant Smith, and neither Business Development Manager Russell Altman nor CEO Robert Altman met or communicated with Mr. Maddox regarding his reported failure to develop the grow light prior to his departure from Altman Lighting, as they trusted the account they had received from Defendant Smith.

30. Defendant Smith left Altman Lighting's employ on or about July 26, 2019.

31. Following Defendant Smith's departure in July 2019, Altman Lighting's Peter Borchetta met with Mr. Maddox to see if he had any interest in returning to Altman Lighting to assist with the large workload that had been caused by Defendant Smith's departure.

32. At that meeting Mr. Maddox advised Mr. Borchetta that, contrary to what Defendant Smith had told Russell Altman, the grow light had in fact been developed to a point that a prototype that met Altman Lighting's requirements had been prepared, which could have been marketed to customers.

33. Mr. Maddox further informed Mr. Borchetta that he had communicated to Defendant Smith that he had been working on the grow light during his tenure at Altman Lighting and had successfully developed a working prototype that met the required specifications.

**Ms. Smith's Misappropriation of a Trade Secret**

34. Mr. Maddox also disclosed to Mr. Borchetta that he had provided the prototype for the grow light to Defendant Smith, at her direction, by delivering the prototype to her personally at her home.

35. Mr. Maddox's communications with Defendant Smith included a personal email dated December 23, 2016, in which Defendant Smith wrote "[w]e have some funding and this project will be separate from Altman Stage Lighting. Hence I called the meeting after hours and off site."

36. On June 19, 2017, Defendant Smith stated to Mr. Maddox, via her personal email, that she would personally accept delivery of the grow light meters and prototype from Mr. Maddox.

37. The grow light meters and prototype from Mr. Maddox were in fact delivered by Mr. Maddox to Defendant Smith's home and not to Altman's place of business on or about June 19, 2017.

38.     Throughout the course of his work on the grow light, Mr. Maddox sent multiple emails to Ms. Smith regarding the grow light, but he did not inform any other Altman employees that a prototype of the product had been developed and delivered to Defendant Smith.

39.     Mr. Maddox and other Altman Lighting engineers were instructed by Defendant Smith not to discuss projects with anyone in or outside the Company.

40.     Defendant Smith did not acknowledge that she had received a working prototype of the grow light until more than a year after she had received the prototype when, after she had left the Company's employ and in response to Altman Lighting's request that any items she had belonging to the Company be returned, she delivered the prototype to Altman Lighting.

41.     The Company possessed trade secrets that related to the grow light, a product used in, or intended to be used in, interstate or foreign commerce.

42.     Defendant Smith used improper means to secretly acquire knowledge of such trade secrets belonging to the Company; had the duty to maintain the secrecy of such trade secrets; and upon information and belief disclosed and used those trade secrets without the express consent of the Company.

## Count I

## TRADE SECRET MISAPPROPRIATION

43.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 inclusive, with the same force and effect as though more fully set forth at length herein.

44.     Defendant Smith and Altman Lighting were in an employee-employer relationship.

45.     By her actions described above, including her misrepresentations to Altman Lighting about the development of the grow light prototype, her failure to inform Altman

Lighting that a prototype of the grow light had been secretly delivered to her at her home, and her utilization of secret information concerning the grow light for personal benefit, Defendant Smith engaged in the misappropriation of a trade secret belonging to Altman.

46. By reason of such misappropriation of the trade secret, Altman Lighting is entitled to bring a civil action under Subsection (b) of the DTSA.

` 47. By reason of such misappropriation of the trade secret, Altman Lighting is entitled to injunctive relief under 18 U.S.C.A. §1836(b)(3)(A) including the grant of an injunction to prevent any actual or threatened misappropriation of the trade secret on such terms as the court deems reasonable.

48. By reason of such misappropriation of the trade secret, Altman Lighting is entitled to damages under 18 U.S.C.A. §1836(b)(3)(B) including damages for actual loss caused by the misappropriation of the trade secret; and damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or in lieu of damages measured by other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret.

49. In addition and pursuant to 18 U.S.C.A. §1836(b)(3)(C), by reason of the willful and malicious misappropriation of a trade secret, Altman Lighting is entitled to exemplary damages in an amount not more than two (2) times the amount of damages awarded under 18 U.S.C.A. §1836(b)(3)(B).

## Count II

### BREACH OF THE DUTY OF FIDELITY

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 49 inclusive, with the same force and effect as though more fully set forth at length herein.

51. Defendant Smith acted in a manner inconsistent with her position as an employee of Altman Lighting and failed to exercise the good faith and loyalty required of an employee in the performance of her duties.

52. By reason of the foregoing, Defendant Smith breached her duty of fidelity and Altman Lighting is entitled to recover any compensation paid to Defendant Smith, an unfaithful agent.

53. The compensation paid to Defendant Smith as General Manager of Altman Lighting totaled $678,615.55.

**Count III**

**FRAUDULENT MISREPRESENATION AND CONCEALMENT**

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 inclusive, with the same force and effect as though more fully set forth at length herein.

55. Defendant Smith, while employed by Altman Lighting, owed her employer a fiduciary duty.

56. Defendant Smith knew the importance Altman Lighting was placing on the development of the grow light and falsely represented that there were significant delays in the grow light's development, and later concealed the fact that a working prototype of the grow light had been developed.

57. Defendant Smith's representations to Altman Lighting that a prototype for the grow light had not been developed constituted material misrepresentations of facts that she knew to be false.

58. Defendant Smith's concealment of the fact that the grow light prototype had been developed and delivered to her personal residence constituted concealment of material facts that she had a duty to disclose.

59. Altman reasonably relied on the false statements made by Defendant Smith.

60. In reliance upon such false statements by Defendant Smith, Altman refrained from entering into contracts for the sale of the grow light or otherwise actively marketing the product.

61. By reason of the foregoing, Altman Lighting suffered monetary damages, including lost profit, and expended resources that were unproductive, in an amount estimated to be no less than $5,000,000.

## Count IV

## USURPATION OF A CORPORATE OPPORTUNITY

62. Altman repeats and realleges each and every allegation contained in paragraphs 1 through 61 inclusive, with the same force and effect as though more fully set forth at length herein.

63. By her actions, Defendant Smith diverted the corporate opportunity to develop the grow light from Altman Lighting without Altman Lighting's consent.

64. Upon information and belief, Defendant Smith diverted this opportunity for her own benefit.

65. Altman Lighting had a tangible expectancy in the opportunity offered by the grow light, as employees of Altman Lighting such as Russell Altman and Peter Borchetta had contributed time, effort, and planning toward the development of the grow light, and the Company had expended more than $30,000 on a consultant to investigate the optimal wavelengths for the light to be used for agricultural purposes.

66. The grow light developed by Altman Lighting and diverted by Defendant Smith represented a significant opportunity for Altman Lighting.

67. By reason of the foregoing, Altman Lighting suffered monetary damages, including lost profit and expended resources, in an amount estimated to be no less than $5,000,000.

**JURY DEMAND**

Plaintiff Altman Lighting demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that Judgment be entered against Defendant as follows:

A. On Plaintiff's First Claim for Relief, adjudging that Defendant Smith's conduct complained of herein constitutes a violation of the DTSA and awarding Altman Lighting judgment in an amount of not less than $5,000,000 together with interest thereon; injunctive relief under 18 U.S.C.A. §1836(b)(3)(A) including the grant of an injunction to prevent any actual or threatened misappropriation of the trade secret on such terms as the court deems reasonable; damages under 18 U.S.C.A. §1836(b)(3)(B) including damages for actual loss caused by the misappropriation of the trade secret; and damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or in lieu of damages measured by other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret, and under 18 U.S.C.A. §1836(b)(3)(C), exemplary damages in an amount equal to two (2) times the amount of damages awarded under 18 U.S.C.A. §1836(b)(3)(B).

      B.      On Plaintiff's Second Claim for Relief, adjudging that Defendant Smith's conduct complained of herein constitutes a breach of the duty of fidelity owed to Altman and awarding Altman Lighting judgment in the amount of $678,615.55 together with interest thereon; and

      C.      On Plaintiff's Third Claim for Relief, adjudging that Defendant Smith's conduct complained of herein constituted material misrepresentations of facts and fraudulent concealment, and awarding Altman Lighting judgment in an amount determined at trial and estimated to be at least $5,000,000 to compensate for lost profit and expended resources; and

      D.      On Plaintiff's Fourth Claim for Relief, adjudging that Defendant Smith's conduct complained of herein constituted a usurpation of a corporate opportunity, and awarding Altman Lighting judgment an amount determined at trial and estimated to be no less than $5,000,000 to compensate for lost profit and expended resources; and

      E.      Awarding Plaintiff Altman Lighting reasonable attorneys' fees and costs incurred in prosecuting the within action; and

      F.      Granting Plaintiff Altman Lighting such other and further relief as this Court deems necessary and proper.

Dated: White Plains, New York
March 26, 2020

                                       **POLLOCK & MAGUIRE, LLP**

                                          /s/ Lee A. Pollock
                              By: _____
                                  Lee A. Pollock
                               A Member of the Firm
                               *Attorneys for Plaintiff Altman Stage Lighting, Inc.*
                               4 West Red Oak Lane, Suite 302
                               White Plains, New York 10604
                               (914) 251-1525
                               lpollock@pollock-maguire.com