UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __2/8/2022__
```

ALTMAN STAGE LIGHTING, INC.,

                              Plaintiff,

          v.

JULIE SMITH,

                              Defendant.

20 CV 2575 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Altman Stage Lighting, Inc. ("Plaintiff") brings this action against Julie Smith

("Defendant"), alleging violation of the Defend Trade Secrets Act, 18 U.S.C. § 1839, and common

law claims for breach of the duty of fidelity, fraudulent misrepresentation and concealment, and

usurpation of a corporate opportunity.  Presently before the Court is Defendant's motion for

judgment on the pleadings (ECF No. 28), and Plaintiff's motion for leave to amend the Complaint

(ECF No. 33.)  For the following reasons both motions are GRANTED in part and DENIED in

part.

## BACKGROUND

        The following facts are taken from Plaintiff's Proposed Amended Complaint ("PAC")

(ECF No. 34)[1] and are accepted as true and construed in the light most favorable to Plaintiff for

purposes of these motions.

        Plaintiff is a manufacturer and vender of lighting products that specializes in theatre and

architectural lighting.  (PAC ¶ 7.)  In 2015, Plaintiff assigned to its employee, Jeffrey Maddox, the

primary responsibility of developing a new product, specifically an LED grow light for agricultural

---

[1] See Polanco v. NCO Portfolio Mgmt., 23 F. Supp. 3d 363, 366 n.1 (S.D.N.Y. 2014) (accepting facts
alleged in the plaintiff's proposed amended complaint as true for the purposes of deciding a motion to amend).

products (the "Grow Light").  (*Id*. ¶ 13.)  In November of 2015, Plaintiff's Business Development Manager, Russell Altman, and Head of Engineering, Peter Borchetta, attended the Marijuana Business Conference & Expo to explore the potential market for the Grow Light.  (*Id*. ¶ 15.)  Plaintiff also had discussions with a cannabis consulting company, Medicine Man Technologies ("Medicine Man"), and anticipated entering into an exclusive arrangement with them to distribute and market the Glow Light.  (*Id*. ¶ 16.)  In November of 2015, Altman and Borchetta visited Medicine Man to determine its needs for the Grow Light and develop design specifications.  (*Id*. ¶ 17.)  On February 2, 2016, Plaintiff received specifications from an outside consultant for the Grow Light.  (*Id*.)

Plaintiff hired Defendant in April of 2016 as the General Manager of the company.  (*Id*. ¶ 10.)  As General Manager, Defendant was responsible for the engineering department, and oversaw Maddox as he worked on the development of the Grow Light.  (*Id*. ¶¶ 19; 41.)  Defendant instructed Maddox and other engineers to not discuss projects with anyone else, and Maddox only sent her updates on the Grow Light.  (*Id*. ¶¶ 41-42.)  On December 23, 2016, Defendant emailed Maddox that they had some funding for the Grow Light and "this project will be separate from Altman Stage Lighting."  (*Id*. ¶ 38.)

In early 2017, Altman asked Defendant multiple times about the progress of the Grow Light.  (*Id*. ¶ 23.)  Defendant initially responded by stating her and Maddox were working on it, but it was behind schedule due to a lack of funding and inadequate resources.  (*Id*. ¶ 24.)  Beginning in March of 2017, both Russell Altman and Chief Executive Officer Robert Altman began to confront Defendant about the lack of progress in developing the Grow Light.  (*Id*. ¶ 26.)  On June 19, 2017, Defendant emailed Maddox that she would personally accept delivery of the Grow Light

prototype.  (*Id*. ¶ 39.)  The prototype was delivered to Defendant's house on or around this same day.  (*Id*. ¶ 40.)

In August of 2017, after receiving the Grow Light prototype, Defendant told Russell and Robert Altman that Maddox had not been working on the Grow Light, he had done no work on the prototype, and that he had been lying about his progress.  (*Id*. ¶ 27.)  At this same meeting, the three participants decided that Maddox's employment should be terminated as a result of his failure to fulfill his obligations.  (*Id*. ¶ 28.)  On August 25, 2017, Defendant wrote up Maddox for his failure to develop the Grow Light.  (*Id*. ¶ 29.)  Maddox left the company on November 17, 2017, after Defendant told him that the "executive group" said that he should depart.  (*Id*. ¶ 31.)

Defendant left the company on or about July 26, 2019.  (*Id*. ¶ 33.)  In 2019, after Defendant had left, Borchetta met with Maddox to see if he had any interest in returning to the company.  (*Id*. ¶ 34.)  During this meeting, Maddox stated that the Grow Light had been developed to a point that a prototype had been prepared, which could have been marketed to customers.  (*Id*. ¶ 35.)  Maddox further stated that he told Defendant that he had been working on the Grow Light and that a working prototype had been developed that met the company's unique requirements and specifications.  (*Id*. ¶ 36.)  Lastly, Maddox stated that he had provided the prototype to Defendant at her home.  (*Id*. ¶ 37.)

Defendant never acknowledged to Plaintiff that she had received a working prototype of the Grow Light.  (*Id*. ¶ 43.)  Plaintiff requested Defendant return any items belonging to the company, and Defendant delivered the prototype to Plaintiff after a year of having it.  (*Id*.)

Plaintiff alleges upon information and belief that prior to, during, and after her employment, Defendant maintained close relationships with past and present employees of the OSRAM Licht Group ("OSRAM").  (*Id*. ¶ 44.)  Several OSRAM employees previously worked

with or for Plaintiff.  (*Id*. ¶¶ 45-50.)  Plaintiff is also married to a former colleague who also has relationships with these same individuals.  (*Id*. ¶¶ 51-54.)  Also, on information and belief, OSRAM did not market or sell any LED grow light products before Plaintiff's development of the Grow Light.  (*Id*. ¶ 58.)

On information and belief, Defendant began working for Clay Paky after she left Plaintiff, a subsidiary of OSRAM.  (*Id*. ¶ 59.)  On July 24, 2017, OSRAM Sylvania Inc., a subsidiary of OSRAM, filed an application for a patent for a horticultural lighting fixture containing characteristics and specifications very similar to the Grow Light.  (*Id*. ¶ 61.)  On information and belief, in 2018, OSRAM purchased Fluence Bioengineering ("Fluence"), a company that creates lighting solutions for crop production.  (*Id*. ¶¶ 62-63.)

On March 26, 2020, Plaintiff filed its Complaint initiating this action.  (ECF No. 1.)  On March 15, 2021, Defendant filed a motion for judgment on the pleadings (ECF No. 28), and Plaintiff filed a cross-motion for leave to amend the Complaint (ECF No. 33.)  Plaintiff filed a memorandum in opposition to the motion for judgment on the pleadings and in support of its cross-motion for leave to amend the complaint.  (ECF No. 32.)  Defendant filed a reply memorandum in further support of her motion for judgment on the pleadings and in opposition to Plaintiff's cross-motion.  (ECF No. 31.)

## LEGAL STANDARD

### I.     *Motion for Judgment on the Pleadings Under Rule 12(c)*

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'"  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d

Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *see also* Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.  However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain,* 478 U.S. 265, 286 (1986).  It is not necessary for the complaint to assert "detailed factual allegations," but it must allege "more than labels and conclusions."  *Twombly*, 550 U.S at 555.  The facts in the complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true."  *Id*.

II.     *Motion to Amend Under Rule 15(a)(2)*

If a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Although the standard is lenient, "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1963)).  Leave to amend may also be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."  *AEP Energy Servs. Gas*

*Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110–11 (2d Cir. 2001)).   In other words, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM.*, 310 F.3d 243, 258 (2d Cir. 2002).   Thus, a court should deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face" or to demonstrate standing to bring the claim. *Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Twombly*, 550 U.S. at 570).

The central inquiry for the Court when considering a motion for judgment on the pleadings in tandem with a motion to amend is, therefore, whether the proposed amended complaint contains claims upon which relief can be granted.  *See Bryan v. I.C. Sys., Inc.*, No. CV 15-6984 (SJF) (GRB), 2017 WL 9485658, at *4 (E.D.N.Y. Aug. 28, 2017*), report & recommendation adopted by* No. 15-cv-6984 (SJF)(GRB), 2017 WL 4326041 (E.D.N.Y. Sept. 28, 2017) ("[T]he Court applies the Rule 12(b)(6) standard in deciding defendant's motion for judgment on the pleadings and in assessing the futility of the proposed amended complaint").   In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  It is important to note that "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Merrill Lynch Ltd. P'ships Litig*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997).  The court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and quotation marks omitted).  A claim is facially plausible when the factual content pleaded allows a court "to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendants aver that the PAC fails to state a claim for trade secret misappropriation, breach of the duty of fidelity, fraudulent misrepresentation and concealment, and usurpation of a corporate opportunity, and therefore amendment is futile and the Complaint should be dismissed.  The Court will examine each claim in turn.

### I.    Defend Trade Secrets Act

The PAC alleges Defendant misappropriated the Grow Light prototype and additional information "including but not limited to the technical specifications, design for the prototype, competition analysis, and marketing plans and strategy" concerning the Grow Light.  (PAC ¶ 72.) The Defend Trade Secrets Act (the "Act") prohibits the possession, duplication, or receipt of trade secrets "related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret[.]"  18 U.S.C. § 1832(a).

To bring a claim under the Act:

> a party must show an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.

*Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (quoting *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc*., No. 15 Civ. 211 (LGS) (RLE), 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (internal quotation marks omitted)).  "'Improper means' under the Act includes 'theft, bribery, misrepresentation, [and] breach or inducement of a breach of a duty

to maintain secrecy,' but excludes 'reverse engineering, independent derivation, or any other lawful means of acquisition.'" *AUA Private Equity Partners, LLC v. Soto*, No. 17 Civ. 8035 (GHW), 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (quoting 18 U.S.C. § 1839(6)).

First, Defendants aver that the PAC fails to identify a trade secret adequately.  (Defendant's Reply Memorandum of Law in Further Support of Her Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Cross-Motion to Amend the Complaint ("Reply") ECF No. 31, at 3-5.) The Act defines a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3)(A)-(B)).

At the motion to dismiss stage, "a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value."  *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540 (KBF), 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018); *see also Next Commc'ns, Inc. v. Viber Media, Inc*., No. 14-cv-8190, 2016 WL 1275659, at *3 (S.D.N.Y. Mar. 30, 2016) ("New York and Second Circuit law . . . requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed . . . .").  Plaintiff does not have to "reveal those secrets in the [c]omplaint simply to prove that they exist."  *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt, LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020).  However, the plaintiff must still give a defendant fair notice of the claim by "including, in at least some identifying detail, the trade secret it is alleged to have misappropriated."  *Id*.

Here, as discussed above, Plaintiff is alleging that Defendant misappropriated the Grow Light, including the one and only prototype, and relevant information including "technical specifications, design for the prototype, competition analysis, and marketing plans and strategy concerning" the Grow Light.  (PAC ¶ 72.)  The term "prototype" is explicitly included in the Act's definition.  *See* 18 U.S.C. § 1839.  *See also Heska Corp. v. Qorvo US, Inc.*, No. 1:19CV1108, 2020 WL 5821078, at \*5 (M.D.N.C. Sept. 30, 2020) ("The [Defend Trade Secrets Act] expressly provides that prototypes are classified as trade secrets.").  Therefore, to adequately allege a trade secret, Plaintiff must show that (i) it took reasonable measures to keep it secret; and (ii) the product derives independent economic value.  Plaintiff's claim fails at the first prong.

The PAC merely alleges that engineers working on the Grow Light were informed by Defendant to not discuss the project with anyone inside or outside the company.  (PAC ¶ 42.)  "There is not a single definition for what constitutes 'reasonable measures,' though [courts have] looked to physical security measures at facilities and confidentiality agreements relating to sensitive information."  *Charles Ramsey Co., Inc. v. Fabtech-NY LLC*, No. 1:18-CV-0546 (LEK/CFH), 2020 WL 352614, at \*15 (N.D.N.Y. Jan. 21, 2020) (citing *United States v. Shanshan Du*, 570 F. App'x 490, 500 (6th Cir. 2014)).  Here, the PAC is silent as to any security measures or confidentiality agreements Plaintiff required Defendant and other employees to adhere to. [2]

---

[2] Plaintiff states that it "adopted a plethora of reasonable measures to secure the Grow Light's secrecy including the use of password protection, encryption and discreet engineering drives and backup drives."  (Plaintiff Altman Stage Lighting's Memorandum of Law in Support of its Cross Motion for Leave to Amend the Complaint, ECF No. 36, at 6.)  Plaintiff also cites to a declaration submitted by Peter Borchetta that discusses Plaintiff's security measures and attaches several agreements.  (*See* Declaration of Peter Borchetta, ("Borchetta Decl.") ECF No. 35).  However, for both motions for leave to amend and motions for judgment on the pleadings, the Court may generally only consider the complaint.  *See, e.g., B & R Supermarket, Inc. v. MasterCard Int'l, Inc.,* No. 17-CV-02738 (MKB) (JO), 2018 WL 4445150, at \*5 (E.D.N.Y. Sept. 18, 2018) ("When deciding a motion for judgment on the pleadings, a court's review is limited to the four corners of the complaint and the answer."); *Joinnides v. Floral Park-Bellerose Union Sch. Dist.*, No. CV 12-5682(JS)(AKT), 2015 WL 1476422, at \*15 (E.D.N.Y. Mar. 31, 2015) ("In essence, the Court's review is relegated to the four corners of the proposed . . . amended complaint.").  As the Borchetta Decl. and its exhibits are not attached or integral to the complaint, nor are they incorporated by reference, *see L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), the Court will not consider this submission while determining the instant motions.

Further, while informing employees that certain information is a trade secret can be a reasonable measure, this is generally not sufficient without more, and Plaintiff has cited no case law to the contrary. *See id*. ("While advising employees that certain information is a trade secret can be an example of a reasonable measure . . . the Court has found no case in which this measure alone was sufficient to state a [Defend Trade Secrets Act] claim."). While Plaintiff alleges employees were instructed not to discuss the Grow Light, without more, the PAC has failed to allege or show Plaintiff took reasonable measures to keep the product secret.

Accordingly, Plaintiff's claim is futile, and the Court grants Defendant's motion for judgment on the pleadings with respect to Plaintiff's Defend Trade Secrets Act claim.

## II.      Breach of the Duty of Fidelity

Plaintiff next alleges that Defendant breached the duty of fidelity when she misrepresented the status of the Grow Light and, upon information and belief, shared trade secrets with OSRAM and others. (PAC ¶ 78.) "One who owes a duty of fidelity to a principal and who is faithless in the performance of h[er] services is generally disentitled to recover h[er] compensation, whether commissions or salary." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (quoting *Feiger v. Iral Jewelry, Ltd.*, 363 N.E.2d 350, 351 (N.Y. 1977)). "New York courts . . . apply two alternative standards for determining whether an employee's conduct warrants forfeiture under the faithless servant doctrine." *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010). For the first standard the plaintiff must show "misconduct and unfaithfulness . . . substantially violate[] the contract of service." *Id*. (quoting *Turner v. Kouwenhoven*, 2 N.E. 637, 639 (N.Y. 1885)). For the second standard the plaintiff must show "an agent 'act[ed] adversely to [her] employer in any part of [a] transaction, or omit[ted] to disclose any interest which would

naturally influence [her] conduct in dealing with the subject of [her] employment.'" *Id.* (quoting *Murray v. Beard*, 7 N.E. 553, 554 (N.Y. 1886)).

Defendant argues that Plaintiff's claim is insufficient as she has failed to allege any elements of self-dealing, and therefore it is not actionable under the faithless servant doctrine. (Reply at 13 (citing *Grewal v. Cuneo*, No. 13-CV-6836(RA), 2016 WL 308803, at *8 (S.D.N.Y. Jan. 25, 2016)).  The PAC alleges, upon information and belief, that Defendant shared trade secrets with OSRAM and others for her personal benefit including to secure employment at Clay Paky. (PAC ¶¶ 67; 78.)  Defendant responds that these allegations are "implausible."  (Reply at 13.)

The *Twombly* plausibility standard does not prevent a plaintiff from pleading facts upon information and belief "where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible[.]"  *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010).  However, this is not a license to make wholly conclusory assertions.  *See Cellucci v. O'Leary*, No. 19-CV-2752 (VEC), 2020 WL 977986, at *1 (S.D.N.Y. Feb. 28, 2020) ("Allegations based on 'information and belief' are accepted only if they are non-conclusory . . . .").  Indeed, "'[c]onclusory pleadings on information and belief are inadequate as a matter of law' to survive a motion to dismiss."  *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202(LBS), 2011 WL 1672066, at *9 (S.D.N.Y. May 4, 2011) (quoting *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 527 (S.D.N.Y. 2004)).

Here, the PAC alleges upon information and belief that Defendant has close professional and personal relationships with past and present employees of OSRAM, and Defendant began working at an OSRAM subsidiary after she left the company.  (PAC ¶¶ 44-54; 59; 62.)  These allegations involve information that would be in the possession and control of the Defendant.

Indeed, any actions or discussions Defendant had with OSRAM and its employees would generally not be known outside of those individuals.

Plaintiff also provides factual information that creates an inference of plausibility. The PAC alleges that (i) Defendant had access to the Grow Light during her employment; (ii) Defendant told Russell and Robert Altman that Maddox was not working on the Grow Light, when she knew a prototype was in development; (iii) Defendant told Maddox to deliver the prototype to her home; (iv) Defendant sent an email stating the Grow Light was "separate from Altman Stage Lighting"; (v) Defendant told Maddox not to tell anyone a prototype had been developed and delivered to her; and (vi) an OSRAM subsidiary filed a patent for an agricultural grow light very similar to the Grow Light after the prototype was delivered to Defendant's house. (*Id*. ¶¶ 61; 68.) This is sufficient, at this stage, to allow Plaintiff to plead facts upon information and belief related to Defendant's alleged self-dealing.[3]

Further, the taking of company property and the diversion of corporate opportunities have been found to satisfy the faithless servant doctrine. *See, e.g.*, *Ashland Mgt. Inc. v. Altair Invs. NA, LLC,* 59 A.D.3d 97, 107 (1st Dep't 2008) ("[A]n employee may create a competing business prior to leaving his employer without breaching any fiduciary duty unless he makes improper use of the

---

[3] Defendant cites *Ad Lightning Inc. v. Clean.io, Inc*., No. 19-CV-7367 (JPO), 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020), for the proposition that implausible allegations cannot satisfy the misappropriation requirement. (Reply at 13.) *Ad Lightning* involved a Defend Trade Secrets Act claim for proprietary information related to online advertising after a company called Oath, Inc. formed the defendant, a company involved in online advertising, after it terminated licensing negotiations with the plaintiff. *Id*. at *2. The Court held that the claim failed at the misappropriation prong as the plaintiff offered "circumstantial datapoints" that were "enough to make its allegations possible, but not plausible." *Id*. at *3. Specifically, the plaintiff alleged (i) Oath, Inc. never activated the reporting function of plaintiff's proprietary information, which purportedly showed that it was never genuinely testing the product's quality but instead studying it for misappropriation; (ii) the defendant was formed eight days after Oath, Inc. terminated licensing negotiations with the plaintiff; and (iii) three of the defendant's executives used to work for Oath, Inc.. *Id*. The Court held these facts were circumstantial, and therefore insufficient. *Id*. However, this case is distinguishable, as here, there are alleged facts that suggest Defendant acquired the Grow Light through improper means, including her misrepresentations to management, her statement that the Grow Light was separate from the company, and her secret acquisition of the prototype. While *Ad Lightning* involved circumstantial and conclusory allegations, the PAC involves allegations that create a plausibility that Defendant's conduct was wrongful.

employer's time, facilities or proprietary secrets[.]"); *Linder v. Innovative Commercial Sys. LLC*, 41 Misc. 3d 1214(A) (Sup. Ct. N.Y. Cnty. 2013) ("[c]ourts will usually only hold an employee liable under the faithless servant doctrine if the employee has usurped a corporate opportunity or actively stolen for the employer."). Here, Plaintiff has plausibly alleged that Defendant diverted a corporate opportunity, the Grow Light, to secure employment at OSRAM, which is sufficient at this stage of the litigation.

Accordingly, Plaintiff's breach of fidelity claim is not futile, and the Court denies Defendant's motion for judgment on the pleadings as to this claim.

### III.    Fraudulent Misrepresentation and Concealment

Plaintiff brings a claim for fraudulent misrepresentation and concealment based on Defendant's alleged false statements about the development of the Grow Light and the concealment of the prototype. (PAC ¶¶ 83-85.) Under New York law, in order to state a claim for fraudulent misrepresentation, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 186–87 (2d Cir. 2004). In addition to the elements required for a fraudulent misrepresentation claim, to prevail on a fraudulent concealment claim, a plaintiff must also allege that a defendant had a "duty to disclose material information." *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008).

Here, Defendant argues that Plaintiff has failed to show it suffered damages based on Defendant's alleged conduct. (Reply at 14.) The PAC states that Plaintiff suffered monetary damages including "the costs incurred to conduct the research and development of the Altman

Grow Light and costs incurred as a result of the unjustified negative write-up of Jeffrey Maddox that led him to leave Altman Lighting." (PAC ¶¶ 87-89.)

First, Defendant argues that Plaintiff's alleged damages consist of profits Plaintiff "might have gained" and are therefore barred by the "out-of-pocket rule." (Reply at 14-15.) New York's out-of-pocket rule states "[t]he true measure of damages [for fraud] is indemnity for the actual pecuniary loss sustained as the direct result of the wrong." *Lama Holding Co. v Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996). Therefore, damages must be "calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained," and "there can be no recovery of profits which would have been realized in the absence of fraud." *Id*. Defendant avers that the alleged misconduct is alleged to have deprived Plaintiff of profits it anticipated earning from its early entry into the market, and this is a clear request for damages to compensate for what Plaintiff allegedly lost. The Court agrees.

While Plaintiff did expend company time and money developing the Grow Light, the working prototype was eventually provided by Plaintiff. The PAC fails to allege any specific damages that Plaintiff actually did occur as a result of the delay in delivery, or Plaintiff's misrepresentations generally. Any allegations of loss profits related to Plaintiff's delay in entering the market consist of potential damages that are barred by the out-of-pocket rule.

Second, Defendant argues that Plaintiff fails to show that Defendant's misrepresentations were the direct and proximate cause of the costs related to Maddox's write up and eventual departure. (Reply at 15.) For fraud, a plaintiff "must plead both transaction causation and loss causation." *Doe v. Uber Techs., Inc.*, No. 20-cv-8446 (LJL), 2021 WL 3193166, at *18 (S.D.N.Y. July 28, 2021). The plaintiff must show "defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly

caused the loss about which plaintiff[s] complain (loss causation)." *Laub v. Faessel,* 745 N.Y.S.2d 534, 536 (1st Dep't 2002)).

Defendants aver that the PAC alleges Maddox was terminated because he failed to fulfill multiple obligations to the company, not just because of Defendant's misrepresentations, and therefore Plaintiff has failed to show transaction causation. (Reply at 16.)  The PAC alleges that at an August 2017 meeting, Defendant informed Russell and Robert Altman that Maddox had not been working on the Grow Light and had been lying about his progress, and at this same meeting it was decided that his employment should be terminated due to his failure to fulfill his obligations. (PAC ¶¶ 27-28.)  Viewing the allegations in the light most favorable to Plaintiff, the Court holds that the PAC plausibly alleges that Defendant's misrepresentations induced Plaintiff to terminate Maddox's employment.

Lastly, Defendant alleges Plaintiff failed to adequately plead loss causation.  (Reply at 17.) "Loss causation is the fundamental core of the common-law concept of proximate cause: . . . 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'"  *Laub,* 745 N.Y.S2d at 536 (citing Prosser and Keeton, Torts § 41, at 263 [5th ed.]).  Here, Defendant alleges that Plaintiff's claim for damages lacks specificity.  She cites to *Gregor v. Rossi*, 120 A.D.3d 447, 448 (1st Dep't 2014), to show that a lack of specificity may render a loss causation claim to be conclusory.  In *Gregor*, the plaintiffs sued three attorneys alleging they were complicit in a fraudulent scheme.  *Id*. at 227.  The court held that the plaintiffs failed to show loss causation, as they alleged they invested the funds they sought to recover between September 2010 and April 2012, which included an eight-month period before the defendants were even involved.  *Id*. at 448.  As the plaintiffs failed to allege specific allegations of investments after interacting with the defendants, the court found the claim to be conclusory.  *Id.*

This case is clearly distinguishable, as here Plaintiff has specifically alleged Defendant's misrepresentations led to Maddox's departure.   Defendant could have reasonably foreseen Maddox's write up and termination based on her misrepresentations.  The exact type and amount of these damages does not impact this analysis.

Accordingly, Plaintiff's fraudulent misrepresentation and concealment claims are not futile, and Defendant's motion for judgment on the pleadings as to this claim is denied.

## IV.    Usurpation of a Corporate Opportunity

Plaintiff's last claim alleges that Defendant diverted the corporate opportunity to develop the Grow Light.  (PAC ¶ 91.)  "Under New York law, to make an usurpation of corporate opportunity claim, a plaintiff must allege that the defendants were corporate fiduciaries of the plaintiff who, without the plaintiff's consent, 'divert[ed] and exploit[ed] for their own benefit any opportunity that should be deemed an asset of the corporation.'"  *Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366, 376–77 (E.D.N.Y. 2014) (citing *Alexander & Alexander of New York, Inc. v. Fritzen*, 147 A.D.2d 241, 246 (1st Dep't 1999)).  A corporate opportunity may be shown where the party has an "interest" or "tangible expectancy" in the opportunity, which is something "more certain than a 'desire' or a 'hope.'"  *Alexander & Alexander*, 147 A.D.2d at 247–48 (citations omitted).  The Second Circuit has stated the doctrine prevents employees from acquiring "property which the corporation needs or is seeking, or which they are otherwise under a duty to the corporation to acquire for it."  *Burg v. Horn*, 380 F.2d 897, 899 (2d Cir. 1967).

Here, Plaintiff is alleging Defendant diverted Plaintiff's tangible expectancy in the Grow Light, as the company contributed time, effort, resources, and planning towards its development, and was in the process of marketing it in anticipation of its completeness.  (Memorandum of Law of Plaintiff Altman Stage Lighting, Inc. In Opposition to Motion to Dismiss and Support of Cross-

Motion for Leave to Amend Complaint, ECF No. 32 at 20-21.)  This is sufficient at this stage of the litigation to consist of a corporate opportunity.  *See Nostrum Pharms., LLC v. Dixit*, No. 13-cv-8718 (CM), 2016 WL 5806781, at *1; 5; 19 (S.D.N.Y. Sept. 23, 2016) (denying summary judgment where plaintiffs alleged the defendant usurped a corporate opportunity when he managed and oversaw the research and development of a generic drug and continued to work on its development while at a different company as "a successful formulation was 'property which the corporation need[ed] or [sought]' and that, as an employee responsible for overseeing research and development, [the defendant] was 'under a duty to the corporation to acquire for it.'"); *Larren v. Santo Domingo*, No. 654159/2015, 2018 N.Y. Misc. LEXIS 306, at *2; 10 (Sup. Ct. N.Y. Cnty. Jan. 25, 2018) (denying dismissal of corporate opportunity claim where the plaintiff alleged the defendant usurped the acquisition of a company within their joint venture's line of business, the plaintiff had an expectancy in the opportunity based on a promise it would be done through the joint venture, and the defendant used the plaintiff's resources in pursuing the opportunity).

Defendant argues Plaintiff has failed to allege that Defendant exploited the Grow Light for her own benefit.  (Reply at 17.)  Defendant's argument mirrors her argument against Plaintiff's faithless servant claim, that Plaintiff's allegations involving OSRAM are implausible.  (*Id*. at 17-18.)  For the same reasons discussed *supra*, the Court holds that Plaintiff has plausibly alleged facts, upon information and belief, that Plaintiff usurped the Grow Light to gain new employment.

Accordingly, Plaintiff's usurpation of a corporate opportunity claim is not futile, and the Court denies Defendant's motion for judgment on the pleadings as to this claim.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for judgment on the pleadings is GRANTED in part and DENIED in part, and Plaintiff's motion for leave to amend the complaint

is GRANTED in part and DENIED in part.  Plaintiff's surviving claims include its common law claims for breach of the duty of fidelity, fraudulent misrepresentation and concealment, and usurpation of a corporate opportunity.  Plaintiff is granted leave to file an amended version of the Proposed Amended Complaint in accordance with this Opinion and Order by March 11, 2022. That version of the Proposed Amended Complaint will become the operative complaint in this matter.  Defendants are then directed to answer or otherwise respond by March 28, 2022.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 28 and 33.

Dated: February 8, 2022                              SO ORDERED:
White Plains, New York

_____

NELSON S. ROMÁN
United States District Judge